Jack Stone
Diamond Heights 1-101 Saiwai-chou 21-18
Kanagawa-ken, Chigasaki-shi
253-0052, Japan
Phone: (81) 070-6951-2337
Email: email@stackjones.com

FILED by _P G_ D.C.

MAR 2 8 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Jack Stone, et al.          ) Case No.:
                            )
                            ) **COMPLAINT**
                            )
          Plaintiff,        )
                            )
vs.                         )
                            )
Hertz Global Holdings, Inc., et)
al                          )
                            )
                            )
                            )
          Defendant         )
_____

**1. Parties in this Complaint**

a. <u>Plaintiffs</u>.

Name: Jack Stone
Address: Diamond Heights 1-101 Saiwai-chou 21-18 Kanagawa-ken, Chigasaki-shi 253-0052, Japan
Telephone: (81) 070-6951-2337

a. <u>Plaintiffs (Continued)</u>.

Name: Miyuki Suzuki
Address: Diamond Heights 1-101 Saiwai-chou 21-18 Kanagawa-ken, Chigasaki-shi 253-0052, Japan
Telephone: (81) 070-6951-2337

Name: MS (a minor child)
Address: Diamond Heights 1-101 Saiwai-chou 21-18 Kanagawa-ken, Chigasaki-shi 253-0052, Japan
Telephone: (81) 070-6951-2337

b. <u>Defendants</u>.

Name: Dollar Rent A Car, Inc.
Address: P.O. Box 26120, Oklahoma City, OK 73126
Telephone: (1) 866-434-2226

Name: Hertz Global Holdings, Inc.
Address: 8501 Williams Road, Estero, Fl., 33928
Telephone: (1) 877-826-8782

Name: Expedia, Inc.
Address: 333 108th Avenue NE, Bellevue WA 98004
Telephone: (1) 800-220-8176

**2. Jurisdiction**

The plaintiff's case belongs in federal court under Diversity Jurisdiction as all parties related to this action do not reside in the state of Florida. The plaintiff resides in Chigasaki, Japan, while defendants, Hertz Global Holdings, Inc. has its principle place of business in Florida. Defendants Expedia, Inc. is located in Bellevue Washington, but is subject to the jurisdiction of this court under Fla. Stat. § 48.193. Further, the harm caused by the defendants occurred by Dollar

Rent A Car, Inc., a subsidiary of Hertz Global Holdings, Inc. at the Miami International Airport, which is located in Dade County, Florida. The amount in controversy also exceeds $75,000.

### 3. Venue

The Southern District of Florida may hear this cause of action because plaintiff's harm arose from conduct committed by defendants Dollar A Car, Inc., a subsidiary of Hertz Global Holdings, Inc., within the city of Miami, located in the county of Dade, in the state of Florida. Further, defendants Dollar Rent A Car, Inc. place of business where the plaintiff's harm occurred is located inside the Miami International Airport.

### 4. Intradistrict Assignment

This lawsuit should be assigned to the U.S. District Court, Southern District, Wilkie D. Ferguson, Jr. U.S. Courthouse, located at 400 North Miami Avenue, Miami, FL 33128 because defendant Dollar A Car, Inc., actionable conduct occurred at the Miami International Airport, which is within the city of Miami, in the county of Dade, Florida.

### 5. Complaint

5a. Plaintiffs are a married couple, and have a child who recently turned three-years-old. Plaintiff's Stone, and child

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 3 Of 22*

are citizens of the U.S. Plaintiff Suzuki is a citizen of the country of Japan.

5b. Plaintiffs planned a vacation in Miami so plaintiff Stone's U.S. family would have the opportunity to meet plaintiff Stone's wife, plaintiff Suzuki, and their minor child. Neither wife, or child had yet to meet the U.S. family, and had never previously traveled to the U.S. mainland.

5c. Plaintiffs entered into a contractual agreement on January 28th 2017, with Expedia, Inc. (Expedia) and Dollar Rent A Car Inc. (Dollar). Dollar is a subsidiary of Hertz Global Holdings Inc.

5d. Plaintiffs paid all airfare and car rental fees in advance for American Airline flights 176, and 2307 to Miami International Airport, and return flight 61. The trip was planned for February 8th, to February 23rd. The Dollar car rental contract was for a Toyota Corolla midsize, or similar vehicle, and to be rented by the plaintiffs for the fifteen-day period of the family vacation. Payment for the flights and car rental was made through a Visa credit card transaction with Expedia, and paid in full to plaintiff's credit card company on February 26th,

2017. The contract parties entered into was confirmed by Expedia, and Dollar through Expedia Confirmation number 158253660249, and Dollar Confirmation number H1940458852.

5e. Plaintiff, Stone is a 58-year-old male, who weighs 148 pounds. Plaintiff Suzuki is small in stature and weighs less than 100 lbs. Plaintiff Stone is court ordered legally disabled, and has been legally disabled for nearly his entire adult life. Plaintiff Stone has great difficulty walking, writing and using his right arm and has to undergo annual injections and various forms of physical therapy in order to have use of his right arm. Plaintiff Stone has endured many surgeries, including five knee surgeries, foot surgery, shoulder surgery, and eye surgery, and decades of physical therapy.

5f. While in law school from 2004-2007, plaintiff Stone sought, and obtained special accommodations related to test taking, requiring a longer duration of time for testing, which had to be spoken into a tape recording device, due to plaintiff's inability to use his right arm. Even preparing this complaint statement for the court, takes a large amount of time, and causes plaintiff Stone great pain and suffering.

5g.  On  February  8th,  2017,  plaintiff's  family  flew  into Miami  International  Airport,  after  nearly  24  hours  of  air  travel from  Narita  Airport  in  Japan,  with  a  stopover,  and  delays  at  the DFW  airport  located  in  Dallas,  Texas.

5h.  Upon  arrival  at  the  Miami  International  Airport  on American  Airline  flight  2307,  the  plaintiffs  went  to  the  baggage claim  area  to  pick  up  baggage  and  a  child  stroller.  The  child stroller  did  not  appear  to  arrive  at  the  airport.  Plaintiff  went to  American  Airlines  missing  baggage  department  and  it  was confirmed  that  the  child  stroller  had  mistakenly  not  been transferred  from  American  flight  176,  onto  American  flight  2307. The  lack  of  the  child  stroller  resulted  in  plaintiffs  having great  difficulty  moving  about,  as  they  not  only  had  to  carry  a child,  but  also  several  pieces  of  luggage.

5i.  With  great  difficulty  plaintiffs  made  their  way  to Dollar  Rent  A  Car,  Inc.  located  at  3900  Northwest  25th  Street, Suite  405,  Miami,  Florida  33142,  inside  the  Miami  International Airport.

5j.  Immediately  upon  arriving  at  Dollar,  plaintiff  Stone observed  those  who  appeared  to  be  similar  situated  as  the plaintiffs  were  being  denied  cars,  and  instead,  subjected  to bait-and-switch,  and  hard  sales  tactics  by  Dollar  employees  so

as to provide the lease of automobiles at much higher rates. At least two parties who refused to pay additional fees were refused cars, regardless of the contractual obligation those parties had entered into with Dollar. This denial of a rental car included a businessman from Columbia, and a family of four with two minor children from France. Both parties left Dollar without being provided vehicles. The Columbia businessman was distraught as he had to be at a business meeting in Boca Raton the following morning.

5k. When it was the plaintiff's turn to be "served," plaintiffs produced their Japanese driver licenses, international driver licenses, passports, and a copy of the printed itinerary, which included the Dollar confirmation number H1940458852, and the rental terms parties had agreed to.

5l. Instead of providing plaintiffs the car, Dollar's employee began to engage in the same tactics the plaintiffs witnessed used against the other parties described above.

5m. The employee who subjected the plaintiffs to the same tactics as the other foreigners was an unnamed Hispanic male, who wore no identification, and who did not identify himself. The Dollar employee was obviously a body builder, and much larger than either plaintiff. The Dollar employee attempted

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 7 Of 22*

numerous tactics so as to coerce the plaintiffs into paying additional excessive fees related to the rental of a car. The excessive fees included 54.00 a day as "protection" against fines for unmanned toll roads. Other fees were related to unnecessary terms the plaintiffs would not agree to accept.

5n. Located at the entrance of Dollar was a huge sign warning of highway fines related to unmanned toll roads as described above. No similar sign existed at any of the other car rental agency that shared the same floor as Dollar, and there were numerous other rental agencies at that location. It was clear to plaintiff Stone that Dollar was exploiting the unmanned toll roads. Plaintiff Stone was born, and raised in Miami. Plaintiff Stone went to college in Miami, and lived in the city for thirty years. Plaintiff Stone was familiar with the toll roads, where they were located, and had no intention of using them during this family vacation. Regardless, the Dollar employee kept raising the toll road issue repeatedly.

Dollar employee continued to resort to duress, stonewalling the plaintiffs regarding Dollar's original contractual obligation. Other Dollar employees engaged in the same tactics, which were apparently designed to wear down exhausted foreign travelers who had arrived at the airport after long flights.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 8 Of 22*

5o. When plaintiffs would not agree to pay additional fees, the Dollar employee attempted to force the plaintiffs to change drivers on the lease, from plaintiff Stone as the primary driver to plaintiff Suzuki as the primary driver at a much higher daily rate. This resulted in Dollar's employee unreasonably demanding additional fee in excess of 1200.00 USD, in clear breach of terms the plaintiff had accepted through the Expedia website, which included the Dollar car rental. The Expedia website accepted plaintiff Stone as the primary driver, and had no issue with accepting this arrangement. Dollar also agreed to those terms by confirming them with confirmation number H1940458852.

5p. The plaintiffs felt as if they were trapped in a "time share" scam, repeatedly repeating, "no thank you," again and again, only to have the same tactics heaped upon them at varying other angles. It became obvious that Dollar's employee was not going to provide a car to the plaintiffs as to the original contractual terms. The additional fees were excessive, considering that Dollar's marketing scheme includes the motto, "See how far your dollar can go with our special offers." The motto is implanted on Dollar's website homepage, and fliers. Dollar was not offering any special offers to the plaintiff, but instead engaged in baiting, barring plaintiffs from access to a car, and thereafter coercing the plaintiffs to pay excessive

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 9 Of 22*

fees in order to leave the airport with a car. If the plaintiffs would not pay additional excessive fees, no rental car was going to be provided, and in fact no rental car was provided.

5q. As a direct result of Dollar's refusal to honor the contract parties had agreed to, the plaintiffs were left stranded at the Miami International Airport, which is halfway around the globe, and with a young child. The circumstance was already exacerbated by the fact that the plaintiff's stroller had not been put on the flight.

5r. Dollar's attempt at unilaterally changing the terms of agreement was the proximate cause of the plaintiff's being stranded without an automobile, and will be addressed in more detail below.

5s. No party would engage into a contract with Dollar if they had knowledge that the contract they entered into would be subject to changes that benefitted no one but Dollar. Dollar's tactics were intentionally misleading, and amounted to fraud by making an initial offer that the plaintiffs agreed to, and thereafter engaging in a bait-and-switch scheme. Dollar clearly had no intention of honoring the contract parties agreed to in advance of arriving at the Miami International Airport. The conduct of Dollar's employees is unconscionable, criminal, and

should be properly investigated by state authorities, and not permitted to continue.

5t. Dollar's employee put the increased fees in writing. However, those writings were not placed on a company form, but instead hastily scrawled out on a scrap piece paper. The plaintiff obtained one of those scrap papers, which show additional fees of up to 96.50 USD for each day of the car rental, plus 54.00 each day for toll protection. The particular scrap piece of paper the plaintiff obtained was not written by the Dollar employee, but instead written by Dollar's manager, who identified himself as Edgar. Edgar would not provide his full name, or the name of the Dollar employee previously discussed.

5u. During the entire time the plaintiffs attempted to obtain an automobile, and leave the airport, the plaintiff's toddler was crying and stressed as the child had endured two flights, totaling nearly 24 hours, including delays, that resulted in the loss of the child's stroller.

5v. Considering the health, and welfare of the child, plaintiff Stone requested Dollar honor the original agreement, and provide a car to the plaintiffs so they could get to their destination. Dollar's employee became agitated at his failure to

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 11 Of 22*

extort additional fees from the plaintiff. The plaintiffs credit card was then demanded by the employee. Plaintiffs refused to provide the credit card stating all fees had already been prepaid and all documentation had already been provided to Dollar, including the itinerary, confirmation number, driver licenses, and forms of identification. Once again the plaintiff requested the car Dollar was contractually obligated to provide the plaintiffs. Again, the plaintiff noted to the Dollar employee that their child was stressed and loudly crying, and it was time to finalize the matter. Regardless, the employee continued to engage in coercing excessive fees, and then demanded those additional fees. Once again the plaintiff requested the car per contractual agreement. The Dollar employee became more agitated, and responded to plaintiff's request by abruptly shouting, "Would you like me to call security?" This outburst was irrational, and provocational, as the plaintiff's had remained calm during the entire sham. Simultaneously, the employee puffed out his chest, and engaged in aggressive physical behavior, making fists with both hands. This was done to intimidate, and provoke a response from the plaintiff.

5w. Plaintiff Suzuki was jolted by the outburst, and immediately became fearful. Plaintiff's Suzuki had never been in the U.S. mainland, and due to her limited ability to communicate

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 12 Of 22*

in English was frightened by the caustic manner of the Dollar employee. The plaintiff responded to the Dollar employee's outburst by stating, "You can call anyone that you want, just get us the car so we can get out of here." The employee then shouted loudly, as he began moving to engage in assaultive conduct, "I'll come across this counter and beat the shit out of you." The employee made other threatening, and derogatory remarks that were were race related, and may have amounted to hate crimes.

5x. The employee did in fact proceed to exit the work area, and come around the counter to the customer area so as to engage in assaulting the plaintiff. The plaintiff immediately located two security cameras on the wall at his left shoulder, and positioned himself between those cameras.

5y. After shouting the threat to engage in assault, the Dollar employee rapidly moved toward the plaintiff's right to exit the work area, but the area was closed off. The employee then immediately began moving rapidly toward the plaintiff's left, where the counter area was opened, but blocked by an African American coworker who sat in a stool, at the right side of the Dollar employee. The entire workforce at Dollar, as well as all of the customers who were present stopped engaging in

their business related activities, and focused their attention on the employee. As the employee continued to move toward the customer area where the plaintiff was located, the plaintiff stated, "No one is going to beat the shit out of me in front of my child." All of this happened quite quickly, and would have been picked up by several security cameras that were located in various positions behind the Dollar counter.

5z. As the Dollar employee continued toward the plaintiff, a Dollar manager quickly appeared over plaintiff's left shoulder. This halted the Dollar employee's forward movement. The Dollar manager ordered the employee out of the work area, apologized to the plaintiffs, and stated the employer would be dealt with appropriately. The plaintiff asked the manager his name, and the manager identified himself only as Edgar.

5a1. The plaintiffs remained fearful that the employee would return, and make good on his threats of assault. The plaintiffs were apprehensive that an imminent assault would occur, and had no knowledge as to where the employee had gone, and whether that employee would return. Plaintiff Stone feared for the safety of his wife, and child as the Dollar employee was much larger than either plaintiff. Plaintiff Suzuki remained fearful as the Dollar manager stated that he would resolve the matter.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 14 Of 22*

5a2. Regardless as to what the plaintiffs were subjected to manager Edgar, engaged in the exact tactics as the employee, in numerous attempts at unilaterally changing the terms of agreement, and also attempted to charge the plaintiffs higher fees. Edgar also put those new terms in writing, placing them on scratch paper. Edgar also refused to provide a car to the terms set forth in the Expedia and Dollar contract, even after being shown the same documents as the Dollar employee.

5a3. Edgar stated that the contract that the parties had agreed to was paid for with plaintiff Suzuki's credit card. Therefore, the driver of the car must be plaintiff Suzuki. This was irrational, as previously stated, the contract was handled through the Expedia website, and plaintiff Stone was entered into the contract as the primary driver.

5a4. While entering into the agreement on the Expedia web form the driver's information was required, and submitted as plaintiff Stone. There was no issue accepting those terms by either Expedia Dollar at the time of submitting that information. Further, the plaintiffs are a married couple, and both had in their possession valid driver licenses, valid international driver licenses, and their passports. Plaintiff Suzuki also had in her possession the same credit card, so there

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 15 Of 22*

could be no identity issues raised by Dollar, as all documentation was exactly as provided in the Expedia agreement.

5a5. Plaintiff's child was now crying uncontrollably. Plaintiff went to the child, as the wife stayed at the counter with Edgar and another Dollar manager, an unnamed female. Plaintiff Suzuki cannot communicate in English well, and this was made known to the Dollar managers. Regardless, Dollar managers coerced plaintiff Suzuki's credit card from her. Plaintiff Suzuki believed that the credit card was being demanded as proof the contract plaintiff's had entered into was in fact paid for with the credit card that she had in her possession. Plaintiff Stone returned to the counter, and told the managers that he was going to a phone booth, and contact Expedia and attempt to finally resolve the matter.

5a6. After being on hold for a lengthy period of time, and repeating the same facts to several different Expedia representatives, Expedia contacted Dollar manager Edgar directly, only after being pressured to do so by the plaintiff, who notified Expedia that they were now stranded at the Miami International Airport. The plaintiffs were placed on hold once again.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 16 Of 22*

5a7. When the Expedia representative returned to the phone, they communicated to the plaintiff that Dollar manager Edgar refused to cooperate with Expedia, and refused to disclose any information as to what had occurred. Expedia told the plaintiff that Dollar refused to honor the terms of the contractually obligated terms of car rental.

5a8. The plaintiffs had to accept the fact that they were stranded at the Miami International Airport. The plaintiffs had to take a taxi to plaintiff Stone's mother's home, costing approximately 45.00 USD.

5a9. On February 9th 2017, the following day, the plaintiffs were contacted by their credit card company, which stated that Dollar Rent A Car, Inc. had attempted to charge plaintiff's credit card two unauthorized charges. One charge was for approximately 400.00 USD, and the second for approximately 800.00 USD. Since these charges could not be authorized, the credit card company declined those charges. Those fraudulent unauthorized charges resulted in plaintiff Suzuki's credit card being placed on a security block, rendering the card useless for the duration of the trip. This is significant, as unlike in the U.S., Japanese do not generally use credit cards for purchases, but instead rely almost entirely on making cash payments for things such as the rental of a car.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 17 Of 22*

5a10. The card was brought along the trip only to be used if an emergency arose. The blocking of the card due to the fraudulent unauthorized charges resulted in plaintiffs being unable to rent another vehicle, and made the card useless if an emergency situation arose.

5a11. On February 9th, 2017 plaintiffs contacted Dollar at both the company headquarters, and at the Miami International Airport location to find out why the company had attempted to make unauthorized charges on plaintiff Suzuki's credit card. Plaintiffs were placed on hold for a lengthy period of time, and would eventually be told management would return the call. Dollar never returned the call.

5a12. On February 10th 2017, Dollar refused to cooperate with the plaintiffs via telephone. Plaintiffs contacted Expedia, which reimbursed plaintiffs 293.45 for Dollar's breach, and refusal to engage in the contractually obligated terms all parties had agreed to.

5a13. On February 11th 2017, plaintiff Stone and his 82-year-old, elderly mother who is disabled, and nearly entirely incapacitated, having two artificial knees, an artificial hip, and an artificial shoulder, among other health related issues, returned to Miami International Airport to rent a car for

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 18 Of 22*

plaintiffs use, as the plaintiffs were unable to obtain a car due to their credit card being blocked due to Dollar's attempt at making two unauthorized charges as described above.

5a14. Plaintiffs reported the matter to the Miami-Metro Police Box located down the corridor from where Dollar is located at the airport. The two on duty police officers escorted plaintiff Stone and his mother to Royal Rent-A-Car, where plaintiff's mother paid a fee of 522.35 for renting a car of much higher quality than that which was to be provided by Dollar. The car was rented from Royal Rent-A-Car under the exact same terms that the plaintiff had contracted through Expedia, and Dollar, with plaintiff Stone as the primary driver.

5a15. As a result of the unconscionable acts of Dollar Rent A Car, Inc., and where Expedia, Inc., failed to engage in due diligence regarding ensuring that Dollar would honor terms offered on the Expedia website, the plaintiff's family trip to Miami was destroyed. Much of plaintiff's itinerary had to be cancelled, including trips to the Metropolitan Miami Zoo, Crandon Park, Key Biscayne, South Beach, engagements with friends, dinner at Mario the Bakers, Joe's Stone Crab, and Haulover Beach, where plaintiff's family has two historical markers located that honor plaintiff's family's WWII contributions to the U.S. military.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 19 Of 22*

5a16. Between February 24th, 2017 and February 28th, 2017, the plaintiffs attempted to resolve this matter by contacting Dollar Rent A Car, Inc., Hertz Global Holdings, Inc., and Expedia, Inc. Plaintiffs spent hours on the phone trying to resolve the matter, but was only hung up upon by company employees, or placed on hold for excessive lengths of time where no one would return, and being told phone calls would be returned. No phone call has been returned.

5a17. Dollar Rent A Car, Inc., Hertz Global Holdings, Inc., and Expedia, Inc. owed a professional duty of care to the plaintiffs and breached that duty owed to the plaintiffs. Dollar Rent A Car, Inc. engaged in fraud, attempting to unilaterally change terms of a car rental contract parties had agreed to. The result being plaintiffs and their minor child were left stranded at Miami International Airport. Dollar Rent A Car, Inc. also engaged in fraud attempting to charge plaintiff's credit card with two unauthorized charges, which is criminal in nature.

5a18. Plaintiffs suffered irreparable harm as a result of Dollar Rent A Car, Inc. Damages include the plaintiffs being placed in apprehension of imminent battery, and threatened with physical harm. The Dollar employee stated herein did in fact attempt to engage in committing criminal battery against the plaintiff. Further, the plaintiff was not in physical condition

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 20 Of 22*

to defend himself, or his family if the Dollar employee had engaged in committing criminal battery the plaintiff had been threatened with.

5a19. Plaintiffs were humiliated, suffered emotional distress, and were placed in circumstances of peril, as well as suffering fear which Dollar's employees knowingly and intentionally created. Apprehension, emotional distress and fear was also heaped onto the plaintiffs, and intentionally created even at the management level, for the sole purpose of extorting additional fees to pad Dollar Rent A Car, Inc. profits, and to increase the commission based salary for the Dollar employee, and managers involved in this matter.

5a20. The harm suffered by the plaintiffs is irreparable, unconscionable, and unforgivable. All of this could have been avoided had Dollar employees maintained a duty of care, and were properly trained regarding contract terms, and obligations. Dollar conduct placed the plaintiffs in a position of peril, and subjected them to an endless array of criminal scams, which the plaintiffs benefitted nothing from, and which the plaintiffs witnessed being subjected to other unsuspecting international travelers.

*Jack Stone vs. Hertz Global Holdings Inc., et al. Complaint Page 21 Of 22*

**6. Demand.**

The plaintiffs seek to be reimbursed for the money paid by plaintiff's mother for renting a car from Royal Rent-A-Car. The plaintiffs seek to be reimbursed for the cost of two taxi rides, the plaintiffs had to obtain to leave the airport, and to return for the purpose of renting a car. The plaintiff seeks punitive damages in the amount of 1.5M USD, as Dollar Rent A Car, Inc. engaged in fraud, and had engaged in that fraud as the standard way of doing business, and causing irreparable harm, not only to the plaintiffs, but also other victims of Dollars sophisticated scheme.

**7. Demand for Jury Trial**

Plaintiff demands a jury trial on all issues stated herein.

*The information presented in this complaint is accurate, made in good faith, and is intended to help the court make a determination as to the severity of the conduct the defendants have, and continue to engage in.*

Respectfully submitted,

Date: March 10th, 2017
Sign Name:  /s/ Jack Stone
Print Name: Jack Stone





C/o clerk of court
Wilke D. Ferguson, Jr.
U.S. Courthouse
400 North Miami Avenue
Miami, FL. 33128
USA

USMS INSPECTED
By

Jack Stone
Diamond Heights 1-101
Chigasaki, Kanagawa
Japan  253-0052